IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| ALABAMA DISABILITIES ADVOCACY ) <br> PROGRAM, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> J. WALTER WOOD, JR. in his official ) <br> capacity as Executive Director of the ) <br> Alabama Department of Youth Services, ) <br> ) <br> Defendant. ) | **COMPLAINT** <br><br> Civil Action No. 2:05cv1030-T |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

**PRELIMINARY STATEMENT**

1. Plaintiff Alabama Disabilities Advocacy Program ("ADAP") is a nonprofit organization in the state of Alabama authorized by congressional mandate to protect and advocate for the civil rights of persons with disabilities in Alabama.

2. On October 18, 2005 and October 19, 2005, ADAP received several complaints alleging that a guard at the Chalkville facility of the Alabama Department of Youth Services ("DYS") assaulted a minor female with a mental illness, J.P., who was remanded to their care, and mechanically restrained her, in a "hog-tied" position, for an entire night. On October 19, 2005, ADAP staff met with J.P. and obtained consent from both J.P. and her mother to access J.P.'s records and open a full investigation of the incident.

3. ADAP has requested full access to J.P.'s records; access to J.P., access to the Chalkville facility, and access to staff and other residents of Chalkville for the purposes of investigating the alleged abuse and neglect of J.P. DYS refused ADAP's request.

4.  ADAP brings this action against J. Walter Wood, Jr., in his official capacity as Executive Director of Alabama Department of Youth Services ("DYS"), pursuant to the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. §§ 10801 et seq. and 42 U.S.C. § 1983.  ADAP seeks a preliminary and permanent injunction preventing J. Walter Wood Jr. from denying ADAP full, complete, and timely access to the records of J.P., a minor with a mental illness confined at DYS's Chalkville facility, and full, complete, and timely access to the Chalkville facility, to J.P., and to other staff and residents of Chalkville for the purposes of conducting a full investigation of alleged abuse and neglect.

## JURSIDICTION

5.  Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331 (federal question).

6.  Venue is proper in this court pursuant to 28 U.S.C. § 1391(b).  Defendant resides in Montgomery County, Alabama.  Ala. Code 1975 § 44-1-20 ("The principal offices of the department [of youth services] shall be located at the state capital.").

## PARTIES

7.  Plaintiff Alabama Disabilities Advocacy Program ("ADAP") is a nonprofit organization in the state of Alabama authorized by congressional mandate to protect and advocate for the civil rights of persons with disabilities in Alabama.  Plaintiff spends significant time and resources monitoring conditions at detention facilities, including facilities like those at Chalkville, and in advocating for the rights of individuals residing in those facilities.  ADAP also is charged with the duty of investigating complaints of abuse and neglect of residents of facilities like Chalkville.  ADAP is

authorized to perform its Congressional mandate pursuant to the PAIMI Act, 42 U.S.C. § 10801 et seq., and other federal laws.

8. J.P. is a client of ADAP.

9. ADAP files this complaint in its own name, to redress injuries to itself, and on behalf of its clients, to redress injuries to ADAP clients.

10. Defendant J. Walter Woods Jr. is the Executive Director of the Alabama Department of Youth Services. DYS is the agency in the state of Alabama established to "promote and safeguard the social well-being and general welfare of the youth of the state through a comprehensive and coordinated program of public services for the prevention of juvenile delinquency and the rehabilitation of delinquent youth." Ala. Code 1975 § 44-1-1.

## STATEMENT OF FACTS

11. The Developmental Disabilities Assistance and Bill of Rights Act ("DD Act"), 42 U.S.C. § 6041 et seq., initially established the Protection and Advocacy ("P&A") system to investigate incidents of abuse and neglect and to pursue legal, administrative and other appropriate remedies to safeguard the rights of individuals with developmental disabilities. Congress extended the protection and advocacy mandate to cover individuals with mental illness with the Protection and Advocacy for Individuals with Mental Illness Act of 1986, as amended, 42 U.S.C. § 10801 et seq. ("PAIMI Act").

12. In order to receive federal funding under the Acts, states must have in effect a protection and advocacy system. ADAP is designated as Alabama's protection and advocacy system. The PADD and PAIMI Acts, along with the Protection and Advocacy for Individual Rights ("PAIR") Program of the Rehabilitation Act of 1973, as

amended, 29 U.S.C. § 794e, and the corresponding implementing regulations, grant the designated protection and advocacy system authority to investigate incidents of abuse and neglect and the authority to pursue legal, administrative, and other appropriate remedies to ensure that the rights of these vulnerable populations are not violated. 42 U.S.C. § 6042(a), 42 U.S.C. § 10805(a), and 29 U.S.C. § 794e(a) and (f).

13. The PAIMI statute provides that P&A systems have the authority to investigate incidents of abuse and neglect of individuals "if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred." 42 U.S.C. § 10805.

14. In order to carry out P&A systems' investigatory mandates, the PAIMI Act authorizes P&A systems broad access to all records of any individual who is a client of the system "if such individual, or the legal guardian, conservator, or other legal representative of such individual, has authorized the system to have such access." 42 U.S.C. § 10805(a)(4). The PAIMI Act also allows P&A systems to access records of individuals who cannot consent because the state is their guardian, and with respect to whom a complaint has been received by the system or with respect to whom there is probable cause to believe such individual has been subjected to abuse or neglect. Id.

15. The PAIMI Act also grants P&A systems unaccompanied access to all areas of the facility used by or accessible to residents, and directly to residents and staff of facilities, to monitor such facilities and when this access is necessary to conduct a full investigation of abuse and neglect. 42 U.S.C. § 10805(a)(3); 42 C.F.R. § 51.42.

14. The Chalkville facility of DYS is a facility that provides care and treatment services to individuals with mental illness. The PAIMI regulations specifically

include "juvenile detention facilities" in the list of facilities covered by the PAIMI Act. 42 C.F.R. § 51.2.

16. On October 18, 2005, ADAP received two separate complaints regarding the alleged beating of J.P. by a guard at Chalkville. Upon information and belief, J.P. is a minor confined at DYS's Chalkville facility, who has been diagnosed with a mental illness, namely bipolar disorder.

17. Temporary legal custody of J.P. resides with the Department of Youth Services. Permanent legal custody remains with A.W., J.P.'s mother, as A.W.'s parental rights have not been terminated.

18. On October 19, 2005, ADAP made a formal request through DYS's legal office to speak with J.P.. Permission was granted via telephone, and ADAP staff met with J.P. that afternoon.

19. J.P. reported to ADAP that the following took place:

  a. A Chalkville guard, Mr. R. (first name unknown), beat her for kicking the door of a seclusion room, and for refusing to be restrained; Mr. R. and two other Chalkville staff, Ms. H. and Ms. H. (first names unknown) sat on her and restrained her by forcibly placing her hands in handcuffs in front of her body, placing her feet in shackles, and tightly binding her handcuffs to her leg shackles. This position, commonly referred to as "hog-tying," caused her body to be positioned in a small ball, with her head in between her feet on the floor, and this caused her chest pain and made it difficult to breathe. After J.P. was restrained, Mr. R. picked her up by her shackles and threw her against the wall. Mr. R. also forcibly slammed her head against the floor, causing injuries to her head.

5

    b.    J.P. was denied her prescribed psychiatric medication, Depakote, for some time before and during the alleged incident. At some point after she was restrained, she took the string that was holding up her pants, removed it, and tied it around her neck in an attempt to commit suicide. While J.P. could tie the string around her neck, J.P. could not remove the string; J.P. was unable to undo the knot in the string holding the string around her neck, due to the restraints on her hands. J.P. felt like she could not breathe, and requested assistance from a staff member. This assistance was denied.

    c.    Chalkville staff told J.P. that she was not allowed to speak with ADAP staff, and that she was told she was not allowed to write to ADAP to complain about her treatment.

20.    ADAP obtained J.P.'s consent to conduct a full investigation, including J.P.'s consent to access J.P.'s records, and to interview residents and staff of Chalkville believed to have information about the incident.

21.    Later that evening, on October 19, 2005, ADAP contacted J.P.'s mother and obtained her consent to access J.P.'s records and open a full investigation into the complaints received regarding the abuse and neglect of J.P..

22.    On October 20, 2005, ADAP informed DYS legal counsel of the fact that it had received complaints regarding the abuse and neglect of J.P., that ADAP had conducted a preliminary investigation and had probable cause to believe J.P. was in imminent danger of serious harm, and that ADAP had received consent from both J.P.

and her mother to access J.P.'s records. ADAP then requested access to J.P.'s records, and access to a specific list of residents and staff of Chalkville that ADAP believed may have information about the alleged abuse and neglect.

23. On October 21, 2005, DYS General Counsel William Samford II, sent a letter to ADAP requesting that ADAP forward to him any complaints received, and stating that "the department is subject to certain statutory responsibilities with reference to child committed to ... [their] custody."

24. On October 21, 2005, ADAP replied to Mr. Samford's letter, explaining that ADAP is statutorily obligated to undertake an independent investigation of the matter, and therefore could not simply forward complaints to DYS. ADAP once again reiterated its request to access J.P.'s records and to speak with staff and residents of Chalkville. See Exhibit 3.

25. On October 24, 2005, ADAP requested permission to meet with its client, J.P., on October 26, 2005.

26. DYS has not responded to this request.

27. DYS is mandated to provide ADAP, as Alabama's Protection and Advocacy agency, access to records of individuals eligible for Protection and Advocacy services, if such individuals reside in their facilities and consent to the release of their records. 42 U.S.C. § 10805(a)(4). DYS is also mandated to provide ADAP access to records of individuals eligible for Protection and Advocacy services, if such individuals reside in their facilities, are unable to consent because they are in the state's legal custody, and "with respect to whom a complaint has been received by the system or with respect to whom as a result of monitoring or other activities (either of which result from a

complaint or other evidence) there is probable cause to believe that such individual has been subject to abuse or neglect." 42 U.S.C.A. § 10805.

28. DYS is also mandated to provide ADAP with access to its Chalkville facility and Chalkville staff and residents, because Chalkville is a facility providing care and treatment to individuals with mental illness. 42 U.S.C. § 10805(a)(3), 42 C.F.R. 51.42. Juvenile detention facilities are specifically included in the list of covered facilities contained in the PAIMI Act implementing regulations. 42 C.F.R. § 51.2.

29. Under the above-described circumstances, Defendant has acted in his official capacity to deny ADAP congressionally mandated complete and timely access to an eligible client's records.

30. Defendant has also acted in his official capacity to deny ADAP congressionally mandated complete and timely access to staff and residents of Chalkville, including J.P., a client of ADAP.

31. Defendant's conduct has prohibited ADAP from conducting an independent, timely and effective investigation in the case of allegations of abuse and neglect on the part of Defendant, his agents and employees, or those acting in active concert, or under contract, or other arrangement with him. This has prevented ADAP from fulfilling its congressionally mandated function of conducting independent investigations.

32. ADAP has made numerous attempts to resolve this matter with DYS, while being respectful and mindful of the urgent nature of the issue, namely the issue of allegations from several sources that a child with a mental illness, in the care and custody

of the state, was denied appropriate treatment, severely beaten, and mechanically restrained (via "hog-tying") for an entire night.

33.  Plaintiff does not have an adequate remedy at law and will be irreparably harmed if Defendant is permitted to continue to deny it access to the Chalkville facility and staff, to J.P.'s records, to J.P., and to other juveniles who are incarcerated at the Chalkville facility.

34.  Plaintiff has reason to believe that J.P. is in imminent danger of further harm, as evidenced by the injuries J.P. sustained, the fact that there is no evidence that Defendant has placed the individuals suspected of abusing J.P. on administrative leave, and the fact that Defendant has attempted to prevent ADAP from having access to J.P., her records, or other residents and staff for the purposes of conducting a full investigation of the alleged abuse.

## CAUSE OF ACTION

35.  The policies, procedures, regulations, practices and customs of Defendant, acting under the color of law, violate and continue to violate the rights of Plaintiff to full, complete, timely and meaningful access to the Chalkville facility, its staff, and its detainees, in violation of the P&A Acts.  Specifically, Defendant has violated the right of Plaintiff, granted to Plaintiff under the PAIMI Act, to J.P.'s records, to J.P., and to Chalkville staff and other residents.  Defendant is preventing Plaintiff from conducting a full investigation of a serious complaint of abuse and neglect, in violation of the PAIMI Act.

## PRAYER FOR RELIEF

36.  Wherefore, Plaintiff respectfully requests that this Court:

a. Grant preliminary and injunctive relief enjoining Defendant and his agents and employees from denying ADAP immediate, full, complete, meaningful and unaccompanied access to its Chalkville facility, the staff of Chalkville, the residents of Chalkville, including J.P., and J.P.'s records or the records of any other youth for which ADAP has received a complaint, in order to monitor Chalkville and to conduct abuse and neglect investigations regarding residents of Chalkville, without advance notice and at any reasonable time, including business and visiting hours;

b. Grant preliminary and permanent injunctive relief enjoining Defendant and his agents and employees from denying ADAP immediate, full, and complete access to the records of J.P. and any other youth for which ADAP has received consent or for which ADAP has received a complaint or has probable cause to believe has been the subject of abuse and/or neglect;

c. Issue a declaratory judgment that Defendant's policies, regulations, and practices of denying ADAP immediate, full, complete, meaningful, and unaccompanied access to Chalkville, its residents, and its staff, in order to monitor Chalkville and to conduct abuse and neglect investigations, without advance notice and at any reasonable time, including during business and visiting hours, violates the Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. § 10801, et seq.;

  d. Issue a declaratory judgment that Defendant's policies, regulations, and practices of denying ADAP immediate, full, and complete access to the records of J.P. or any other youth from which consent has been received or for which ADAP has received a complaint or for which ADAP has probable cause to believe has been subjected to abuse or neglect, violates the Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. § 10801, et seq.;

  e. Issue a protective order, preliminarily and permanently enjoining Defendant from retaliating against J.P. or any other resident or staff who may have informed ADAP of the alleged abuse of a resident of Chalkville. Plaintiff requests that Defendant and anyone acting as his agent, employee, or in contract or concert with Defendant be enjoined from physically harming J.P., or any other resident of Chalkville that may have reported suspected abuse and neglect to ADAP, in any manner, including assaulting, striking, kicking, throwing, pushing, "hog-tying," or mechanically restraining such residents, or denying such residents medical treatment lawfully prescribed by a medical professional, or from denying such residents reasonable access to the telephone and the U.S. mail for the purposes of communicating with ADAP staff and attorneys;

  f. Award Plaintiff reasonably necessary attorneys' fees and costs pursuant to 28 U.S.C. § 2202 and 42 U.S.C. § 1988; and

g.  Award such other and further relief to which Plaintiff is justly entitled, at law or equity.

Respectfully Submitted,

*Lauren Carr*
LAUREN CARR
State Bar no. 1878-R65L

JENNIFER LAV
State Bar no. ASB-2817-E26L

ALABAMA DISABILITIES
ADVOCACY PROGRAM
University of Alabama
Box 870395
Tuscaloosa, Alabama 35487
(205) 348-4928 (Phone)
(205) 349-3909 (Facsimile)

ATTORNEYS FOR PLAINTIFF

CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2005, I served a copy of the foregoing on J. Walter Wood Jr., Executive Director of the Alabama Department of Youth Services, via Certified U.S. Mail, Return Receipt Requested.

Respectfully Submitted,

*[signature]*

Lauren Carr
ASB # 1878-R65L
ALABAMA DISABILITIES
ADVOCACY PROGRAM
University of Alabama
Box 870395
Tuscaloosa, Alabama 35487
(205) 348-4928 (Phone)
(205) 349-3909 (Facsimile)
lcarr@adap.ua.edu