IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| ALABAMA DISBILITIES ADVOCACY PROGRAM,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>J. WALTER WOOD, JR. in his official )<br>capacity as Executive Director of the )<br>Alabama Department of Youth Services, )<br>)<br>Defendant.  )<br>) | **MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION**<br><br>Civil Action No. 2:05cv1030-T |

**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION**

**INTRODUCTION**

Plaintiff Alabama Disabilities Advocacy Program (ADAP) seeks a Preliminary Injunction under F.R.C.P. Rule 65(a) and any other injunctive relief this Court deems appropriate under Rule 65.

On October 18 and 19, 2005, ADAP received complaints alleging that a guard at the Chalkville facility of the Alabama Department of Youth Services ("DYS") had assaulted a mentally ill youth and left her shackled in a "hog-tied" position for an entire night. After meeting with J.P. to view her injuries and verify that probable cause existed to suspect abuse and neglect, Plaintiff ADAP obtained consent from both J.P. and her mother to open a full investigation of the incident. Despite an express congressional mandate that agencies like ADAP have broad access to facilities that provide treatment and care to individuals with disabilities in order to conduct independent investigations of allegations of abuse and neglect of individuals confined in such facilities, the Defendant

SCANNED
10/26/05

Walter Wood, Executive Director of DYS, has denied multiple written requests by ADAP to meet with J.P., to view J.P.'s records, and to access the Chalkville facility, and the staff and residents of Chalkville. Exhibits 1-5, & 7.[1] Because the Defendant's actions have made it impossible for the Plaintiff to fulfill its statutory obligations to protect and advocate for J.P., a minor with a serious mental illness, Plaintiff seeks a preliminary injunction compelling the Defendant to comply with federal law and allow the Plaintiff to conduct a full, independent and timely investigation of allegations of abuse and neglect.

Alabama Disabilities Advocacy Program ("ADAP") is a nonprofit organization in the state of Alabama authorized by congressional mandate to protect and advocate for the civil rights of persons with disabilities in Alabama. As the Protection and Advocacy (P&A) agency for Alabama, ADAP is authorized to access all facilities that provide treatment and care to individuals with disabilities, to speak with the staff and residents of such facilities, and to conduct independent investigations of allegations of abuse and neglect of individuals confined in such facilities. See 42 U.S.C. § 6000, et seq., 42 U.S.C. § 10801 et seq., and 29 U.S.C. § 794e.

After receiving the above-mentioned complaints, on October 19, 2005, ADAP staff met with J.P., viewed her injuries and took her statement, and determined that there was probable cause to believe the alleged abuse and neglect took place. ADAP also obtained consent from both J.P. and her mother to access J.P.'s records and open a full investigation of the incident.

---

1. The exhibits cited to above have been redacted, because they contain personally identifiable information regarding youth confined at Chalkville. Under state law, juvenile records must be kept confidential, and because ADAP is obligated to keep records confidential to the "same extent as is required of" DYS, 42 U.S.C. § 10806, these exhibits have not been filed with the Complaint. Plaintiff is simultaneously filing a Motion to Place Exhibits Under Seal and to Identify J.P. and her mother, A.W., By Initials Only, and will file the original exhibits if the Court grants permission to do so under seal. The exhibits are also available for in camera inspection by the Court and the Defendant.

ADAP has requested full access to J.P.'s records, and to speak with J.P., staff and other residents of Chalkville for the purposes of investigating the alleged abuse and neglect of J.P. Exhibits 1, 2, 4, & 5. Defendant has denied ADAP's reasonable and lawful request to meet with J.P., to view J.P.'s records, and to access the Chalkville facility, and the staff and residents of Chalkville. Exhibit 3 & 7. This denial is preventing ADAP from fulfilling its federal obligation of conducting an independent and timely investigation into serious allegations of abuse and neglect. ADAP seeks a preliminary injunction to enjoin Defendant from continuing to prevent ADAP from conducting a full, independent and timely investigation of allegations of abuse and neglect.

## STATUTORY BACKGROUND AND AUTHORITY OF PROTECTION AND ADVOCACY AGENCIES

Because many persons with disabilities living in private and public institutions suffer from abuse and neglect, and often have few, if any, avenues to prevent or remedy abuses committed by the people who have daily control over their lives, Congress mandated that each state have a Protection and Advocacy (P&A) system. The state P&A system is designed to have independent access to such institutions in order to detect and prevent such abuse and neglect. Congress first enacted the Developmental Disabilities Assistance and Bill of Rights Act of 1975, (DD Act) 42 U.S.C. § 6000 et seq., to protect the rights of individuals with developmental disabilities. Following congressional hearings and investigations substantiating numerous reports of abuse and neglect in state facilities against individuals with mental illness, Congress enacted the Protection and Advocacy for Individuals with Mental Illness Act of 1986 (PAIMI Act), 42 U.S.C. § 10801 et seq. As Congress explained, in the findings and statement of purpose for the

PAIMI Act:

> "The Congress finds that ... individuals with mental illness are vulnerable to abuse and serious injury; ... individuals with mental illness are subject to neglect, including lack of treatment, adequate nutrition, clothing, health care, and adequate discharge planning; and State systems for monitoring compliance with respect to the rights of individuals with mental illness vary widely and are frequently inadequate. ... The purposes of this chapter are ... to ensure that the rights of individuals with mental illness are protected; and ... to assist States to establish and operate a protection and advocacy system for individuals with mental illness which will ... protect and advocate the rights of such individuals through activities to ensure the enforcement of the Constitution and Federal and State statutes; and ... investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred."

42 U.S.C.A. § 10801.

The PAIMI Act was modeled on the DD Act, and provides parallel protections for individuals with mental illness, using the same mechanisms as the DD Act. <u>Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Center</u>, 894 F. Supp. 424, 428 (M.D. Ala. 1995) (Thompson, J.) (stating that the "legislative history suggests that the record access provisions of the [DD and PAIMI] acts are meant to be consistent"), <u>aff'd</u> 97 F.3d 492 (11th Cir. 1996).

Therefore, the P&A system is a nationwide network of disability rights organizations which are mandated, under the Developmental Disabilities Assistance and Bill of Rights Act of 1975, 42 U.S.C. § 6000 <u>et seq.</u>, as amended, the Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. § 10801 <u>et seq.</u>, and the Protection and Advocacy for Individual Rights Program, 29 U.S.C. § 794e, to investigate and remedy the abuse and neglect of persons with disabilities, and provide them with

4

legal representation and advocacy services.

Courts have uniformly held that the P&A access authority requires facilities to permit the agency to operate with broad discretion and independence in gaining access to facilities, residents of facilities, staff of facilities, and the records of residents of facilities for investigative purposes. See generally Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Center, 894 F. Supp. 424 (M.D. Ala. 1995) (Thompson, J.), aff'd 97 F.3d 492 (11th Cir. 1996); Center for Legal Advocacy v. Hammons, 323 F.3d 1262 (10th Cir. 2003); Pennsylvania Protection and Advocacy, Inc. v. Houstoun, 228 F.3d 423 (3d Cir. 2000); Mississippi Protection & Advocacy System, Inc.v. Cotton, 929 F.2d 1054 (5th Cir. 1991).

Plaintiff ADAP has been designated as the P&A agency for the State of Alabama, mandated with protecting and advocating for the rights of individuals with disabilities in the State of Alabama.

## PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF BY LAW

Plaintiff is entitled to injunctive relief as a matter of law. ADAP is entitled to timely and complete access to the records of J.P., an individual with a mental illness residing in a state facility. 42 U.S.C. § 10805(a)(4). The PAIMI Act further authorizes ADAP to conduct a full, independent, and timely investigation of the several allegations ADAP has received of the abuse of J.P. by Defendant's agents and employees. 42 U.S.C. § 10805(a)(1)(A). This investigative access includes the right to have "reasonable unaccompanied access to public and private facilities and programs ... and to all areas of the facility which are used by residents or are accessible to residents" and the right to speak with J.P. and other residents and staff when it is "necessary to conduct a full

investigation of an incident of abuse and neglect." 42 C.F.R. § 51.42(b). In contravention of federal law, Defendant has denied ADAP this access and is therefore preventing ADAP from conducting a full, meaningful, and timely independent investigation of allegations of abuse and neglect. This court's timely resolution of this matter is required.

Rule 65(a) of the Federal Rules of Civil Procedure provides for the issuance of preliminary relief. The Eleventh Circuit has established that the Plaintiff must satisfy the follow four factors to obtain preliminary injunctive relief:

> A district court may grant injunctive relief if the movant shows the following: (1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.

McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998). As demonstrated below, all four factors support Plaintiffs' motion in this case.

1.  **Substantial Likelihood of Success on the Merits**

Plaintiff is likely to prevail on its claim that Defendant and his agents and employees should not be permitted to continue to prevent ADAP from accessing its facilities, residents, staff, and records of residents necessary to conduct a full, meaningful and timely investigation of allegations of abuse and neglect. Defendant's acts are in direct violation of the PAIMI Act, 42 U.S.C. § 10801 et seq.

   a.  **Defendant's Denial of Access to J.P.'s Records Violates the PAIMI Act.**

The PAIMI Act permits ADAP to access the records of J.P. Records of a minor "for whom the legal guardian is the State" are accessible by the P&A when "a complaint has been received by the system or with respect to whom as a result of monitoring or

other activities (either of which result from a complaint or other evidence) there is probable cause to believe that such individual has been subject to abuse or neglect" 42 U.S.C. § 10805(a)(4)(B) (emphasis provided).

J.P. is a minor from whom the DYS has temporary legal custody. On October 18 and 19, ADAP received several complaints regarding the alleged abuse and neglect of J.P. Therefore, a "complaint has been received by the system." 42 U.S.C. § 10805(a)(4)(B). Furthermore, as a result of monitoring activities on October 19, 2005, ADAP has probable cause to believe J.P. has been subject to abuse or neglect. Id. Namely, J.P.'s injuries, witnessed by ADAP staff, taken in conjunction with J.P.'s statements and the statements of others who lodged complaints with ADAP, constitute probable cause to believe J.P. has been subjected to abuse and neglect. Exhibit 6.[2]

If the Court determines that J.P. is not an individual "for whom the legal guardian is the State," ADAP has access because J.P.'s mother has consented. 42 U.S.C.A. § 10805 The PAIMI Act states that the P&A shall "have access to all records of ... any individual who is a client of the system if such individual, or the legal guardian, conservator, or other legal representative of such individual, has authorized the system to have such access." 42 U.S.C. § 10805(a)(4)(A). As an individual with a disability who has requested assistance from ADAP, J.P. is clearly Plaintiff's client. In an abundance of caution, ADAP has obtained the consent of both J.P. and her mother to access J.P.'s records. Therefore, if the court determines that the state is not J.P.'s legal guardian, access to J.P.'s records is still mandated on the basis that J.P. and her mother have

---

[2] Exhibit 6 contains six photographs of J.P.'s injuries, including cuts and bruises on her upper and lower arms, and on her shoulders. Because this exhibit cannot be redacted, Plaintiff has not filed Exhibit 6, but will file the original exhibits if this Court grants Plaintiff's motion to file exhibits under seal. The original photographs are also available for in camera inspection by the Court and the Defendant.

7

authorized ADAP to have such access.

   b. **Defendant Is Violating Plaintiff's Right to Access to its Facility, and to Access the Staff and Residents of its Facility, in Violation of the PAIMI Act.**

In addition to access to records, the PAIMI Act grants P&A agencies "access to facilities in the State providing care or treatment," 42 U.S.C. § 10805, including the staff and residents of the facility:

> "The P & A system shall have reasonable unaccompanied access to residents at all times necessary to conduct a full investigation of an incident of abuse or neglect. This authority shall include the opportunity to interview any facility service recipient, employee, or other persons, including the person thought to be the victim of such abuse, who might be reasonably believed by the system to have knowledge of the incident under investigation."

42 C.F.R. § 51.42.

On October 20, 2005 and October 21, 2005, ADAP explained these rules to Defendant, through Defendant's legal counsel, informed Defendant of its intention to open a full investigation of the alleged abuse and neglect of J.P. and requested access to the Chalkville facility and to a specific list of individuals that that ADAP reasonably believes have knowledge of the incident under investigation. Exhibits 1, 2, 3 & 5. ADAP went so far as to send a facsimile of the applicable sections of the U.S. Code and Code of Federal Regulations to Defendant's legal counsel. Exhibit 2. Instead of granting this access, Defendant, through his legal counsel, has simply stated that ADAP should "forward ... whatever complaints ... [ADAP has] received." Exhibit 3. The denial of access did not include any explanation for this denial beyond a statement that, "the department is subject to certain statutory responsibilities with reference to children in our custody." Id. ADAP has requested written justification for this denial, as is required by

42 C.F.R. § 51.43, but has not received any written justification. Exhibit 3 & 7.

As explained above, ADAP received several complaints alleging serious abuse of J.P. ADAP has determined that there is probable cause to believe that J.P. has been subjected to abuse and neglect, and has further determined that J.P. may be in imminent danger of serious abuse or neglect. Under these circumstances, Defendant has no authority to deny ADAP simple access to its facilities, residents, and staff. Doing prevents ADAP from conducting a full, complete, and timely investigation, and prevents ADAP from fulfilling its congressionally mandated duties. Defendant's outright denial of access to its Chalkville facility is a clear violation of the PAIMI Act.

### 2. Plaintiff Will Suffer Irreparable Injury Unless the Injunction Issues

A court may enter a preliminary injunction to prevent a plaintiff from being injured, and where there is no adequate remedy at law. Reynolds v. Roberts, 207 F.3d 1288, 1299 (11th Cir. 2000). Irreparable harm to the moving party creates the urgency justifying immediate relief, and is, therefore, a vital element of injunctive relief. Although the injury can take many forms, it must be of such a nature that a legal remedy will not make the injured party whole. See generally, 11 A.C. Wright, A. Miller, and M. Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 1995).

Plaintiff will suffer irreparable harm without this Court's entering preliminary injunctive relief to prevent Defendant from refusing to provide ADAP with access to the records of J.P., and access to Chalkville facilities, residents, and staff for the purposes of conducting a full, timely and independent investigation of serious allegations of abuse and neglect. Namely, Plaintiff will be barred from fulfilling its congressional mandate to protect and advocate for individuals with mental illness, as it is required to do under the

PAIMI Act. Plaintiff cannot effectively conduct independent investigations if state actors deny it the access granted to it by federal law.

*Timely* access to facilities is necessary to conduct a proper investigation, because individuals may remain at risk for abuse if Plaintiff's access is delayed, or they may be subject to retaliation for reporting incidents of abuse and neglect. Furthermore, the average stay of a youth at Chalkville is short-term, and therefore if an investigation is delayed, crucial witnesses to the alleged abuse will no longer be available to substantiate such claims. This will cause Plaintiff to be irreparably harms if a preliminary injunction is not granted. Therefore, Plaintiff satisfies the second prong of the Eleventh Circuit's test for the entry of preliminary injunctive relief.

### 3. Balance of Hardships

The irreparable harm that Plaintiff will suffer without preliminary relief greatly outweighs any harm Defendant may suffer if such relief is granted. As the Eleventh Circuit Court of Appeals has determined, in a P&A access case,

> "the interests of three parties are implicated—those of the facility, those of the individual who may have been subject to abuse and his or her family, and those of the P&A, which has an obligation and mandate to protect from abuse the individual(s) and others who are similarly situated. *In this balance, the facility's interests surely are less viable and of less import than those of the individual and the P&A.* The facility can claim no interest in avoiding investigations of harm or injury to a person with a disability."

Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Center, 9 F.3d 492 (11th Cir. 1996).

Furthermore, ADAP itself has a statutory duty under the PAIMI Act to maintain the confidentiality of any records to the same extent as DYS. 42 U.S.C.A. § 10806 ("An

eligible system which, pursuant to section 10805(a)(4) of this title, has access to records which, under Federal or State law, are required to be maintained in a confidential manner by a provider of mental health services, shall, except as provided in subsection (b) of this section, maintain the confidentiality of such records to the same extent as is required of the provider of such services."). Therefore, DYS's refusal to release such records cannot be based on a desire to protect the confidentiality of such records. See also Michigan Protection & Advocacy Service, Inc. v. Miller, 849 F. Supp. 1202, 1208 (W.D. Mich.1994) (rejecting juvenile facility's argument that its interest was in protecting the confidentiality of records, and citing to a P&A system's independent obligation to safeguard such records to the same expect as is required by the facility itself).

The balance of hardships greatly favors granting preliminary injunctive relief. Thus, Plaintiff satisfies the third prong on the Eleventh Circuit's test for the entry of preliminary injunctive relief.

4.     **Public Interest**

Granting a preliminary injunction will not disserve the public interest. Protecting residents of state facilities from abuse and neglect is in the public's interest. Congress has determined it is in the public's interest to have a nationwide system of P&A organizations to protect and advocate for these individuals. The purpose of the PAIMI Act is to:

> "to ensure that the rights of individuals with mental illness are protected; and to assist States to establish and operate a protection and advocacy system for individuals with mental illness which will ... protect and advocate the rights of such individuals ... ; and investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred.").

42 U.S.C. § 10801. The legislative history and the express purpose and language of the federal statutes relied upon by Plaintiff broadly support the issuance of the preliminary injunction. Therefore, granting a preliminary injunction will serve the public interest by effectuating the intent of the PAIMI statute and by protecting the rights of individuals with mental illness, and Plaintiff satisfies the fourth prong of the Eleventh Circuit's test for the entry of preliminary injunctive relief.

## CONCLUSION

Plaintiff is entitled to a preliminary injunction. First, there is a substantial likelihood plaintiff will prevail on the merits. The PAIMI Act is clear that ADAP, as the Protection and Advocacy agency for Alabama, has access to facilities, facility staff and residents, and the records of any individual, like J.P., about which the system has received a complaint, or has probable cause to believe has been a victim of abuse, or for whom the system has received consent to access records from the legal guardian. Second, plaintiff will suffer irreparable harm if Defendant's actions continue to prevent ADAP from fulfilling its congressionally mandated duties. J.P. was allegedly hog-tied for an entire night and was seriously beaten while in these restraints. ADAP has determined she may continue to be in imminent risk of harm. Without immediate access, ADAP cannot effectively protect J.P. from abuse and neglect, defeating the very purpose for which ADAP was created. Third, the balance of hardships greatly favors granting the preliminary injunction. As the Eleventh Circuit has explained, a facility's interest in preventing the minor disruptions that may be involved in a P&A agency conducting an investigation are surely outweighed by the public interest the P&A serves by acting to protect vulnerable individuals from abuse. <u>Alabama Disabilities Advocacy Program v.</u>

J.S. Tarwater Developmental Center, 9 F.3d 492 (11th Cir. 1996). Last, granting the preliminary injunction is in the public interest. The public has an interest in ensuring that minors with mental illness that are confined in state facilities are free from abuse and neglect.

Plaintiff respectfully requests that this Court grant an immediate injunction, enjoining Defendant from continuing to prevent ADAP from conducting a timely, complete and meaningful investigation into the alleged abuse of J.P., by barring ADAP from having access to J.P.'s records, the Chalkville facility, and the staff and residents of Chalkville, including J.P.

Respectfully Submitted,

/s/ Lauren Carr

LAUREN CARR
State Bar no. ASB-1878-R65L

JENNIFER LAV
State Bar no. ASB-2817-E26L

ALABAMA DISABILITIES
ADVOCACY PROGRAM
University of Alabama
Box 870395
Tuscaloosa, Alabama 35487
(205) 348-4928 (Phone)
(205) 349-3909 (Facsimile)
lcarr@adap.ua.edu
jlav@adap.ua.edu
ATTORNEYS FOR PLAINTIFF

CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2005, I served a copy of the foregoing on J. Walter Wood Jr., Executive Director of the Alabama Department of Youth Services, via Certified U.S. Mail, Return Receipt Requested.

Respectfully Submitted,

*Lauren Carr*
Lauren Carr
ASB-1878-R65L
ALABAMA DISABILITIES
ADVOCACY PROGRAM
University of Alabama
Box 870395
Tuscaloosa, Alabama 35487
(205) 348-4928 (Phone)
(205) 349-3909 (Facsimile)
lcarr@adap.ua.edu